IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>DOUGLAS A. GROOMS<br><br>Debtor | Bankruptcy No. 16-10030-<br><br>TPA Adv. Pro. No. 16-1041-<br><br>TPA Related to Doc. No. 29 |
| JOSEPH B. SPERO, TRUSTEE<br><br>Plaintiff,<br>v.<br><br>COMMUNITY CHEVROLET, INC.,<br>And the United States of America<br><br>Defendants. | Hearing February 13, 2017 @ 10:00 |

**COMMUNITY CHEVROLET, INC.'S BRIEF IN SUPPORT OF ITS RESPONSE
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Community Chevrolet, Inc. submits this Brief in Support of its Response to Plaintiffs Motion for Summary Judgment. As discussed below, Joseph **B.** Spero, Trustee ("Plaintiff'), is not entitled to judgment as a matter of law, and the Court should deny said motion for summary judgment. Moreover, Community Chevrolet, Inc. consents to the United States' Motion for Summary Judgment.

**PRELIMINARY STATEMENT**

On August 16, 2016, Plaintiff Joseph B. Spero, Trustee, filed this adversary proceeding seeking to avoid a $100,000.00 criminal restitution payment made by Debtor to Community Chevrolet, Inc. That payment was made pursuant to a plea agreement between Douglas A. Grooms and the United States Attorney's Office pursuant to which Grooms pled guilty to one count of attempted wire fraud and received a reduction in his incarceration time in exchange for "cooperation," *i.e.* Payment of substantial partial restitution to his victim, Community Chevrolet, Inc. That payment and

Page | 1

the corresponding reduction in jail time constituted "new value." That "new value" is a complete defense to the Trustees adversary proceeding attempting to avoid and "claw-back" the restitution payment tendered by Grooms, through his criminal counsel, and received by Community Chevrolet, Inc.

## Statement of the Facts

The factual scenario underlying this Adversary Proceeding were succinctly stated by this Court in its Memorandum Order dated December 20, 2017, authorizing Intervention by the United States of America through the U. S. Attorney for this District. The Defendant acknowledges that this Statement of the Facts incorporates substantial portions of this Court's fact findings contained in that Memorandum Order. The Court, in substance, found that in late 2015 the Debtor was charged with the federal crime of wire fraud in connection with an embezzlement scheme he was engaged in between 2008 and 2013. That scheme involved the Debtor, in his former capacity as a manager and employee of Community Chevrolet Inc. ("Victim"), causing phony advertising invoices totaling almost half a million dollars to be unwittingly paid by Community, to the ultimate benefit of the Debtor. In other words, Community was a victim of the Debtor's criminal conduct.

The Debtor/Criminal Defendant reached a plea agreement with the United States Attorney's Office sometime in October or early November, (with the Victim's consent) pursuant to which Grooms pled guilty to a single count of Attempted Wire Fraud. That plea agreement, which mandated incarceration as discussed below, included as a condition that the Debtor would make full restitution to Community, and that $100,000 of that restitution would be paid in advance of his sentencing. The restitution requirements of that plea agreement were mandated by the *Mandatory Victims Restitution Act* ("MVRA"),

*18 U.S.C. Sec. 3663A*, which makes victim restitution a required feature of sentencing in certain federal crimes including Wire Fraud.

Community Chevrolet, Inc. is a family business which is owned by Robert M. Kongelka, who is semi-retired and a senior citizen, and other family members. Community's sole location is in Meadville, Pennsylvania.

Pursuant to the terms and requirements of Grooms' plea agreement, his Counsel tendered an IOLTA Account check for $100,000 payment to Community on or about November [18], 2015. Debtor subsequently filed this bankruptcy case on January 15, 2016. Pursuant to the plea agreement, the Debtor pleaded guilty to the crime of attempted wire fraud on February 29, 2016. The Debtor was subsequently sentenced by the District Court in a criminal judgment order on July 18, 2016, that includes a restitution provision of $485,800. The criminal judgment order also indicates that the 24- month sentence imposed on the Debtor was below the sentencing guideline range based on the plea agreement. In this adversary proceeding the Trustee is seeking to avoid the $100,000 payment from the Debtor to Community on the grounds that it was a preferential transfer under *11 U.S.C. §547*.

The U.S. moved to intervene in the case. The Court granted permission to intervene pursuant to *Fed.R.Civ.P. 24(b)(2)* finding that Community's defense is based on the criminal judgment order, 18 U.S.C. §3613(a) and the *Mandatory Victims Restitution Act* ("MVRA"), *18 U.S.C. §3663A*, which make victim restitution a required feature of sentencing in certain federal crimes including Wire Fraud; and that *MVRA* is "administered" by the U.S, and that the criminal judgment order was issued or made at least in part under the *MVRA*.

The Trustee's argument in support of the alleged preferential transfer is a relatively straightforward based upon the provisions of 11 U.S.C. §547 (b). Interestingly, the Trustee additionally alleges that the funds, paid by Grooms to his attorney and subsequently paid by his attorney to the Victim, were apparently tainted; and, implicitly advances the novel argument that the crime Victim had some undefined obligation to question the source of funds paid to Victim by the criminal Defendant's counsel, through the defense counsel's IOLTA account.

## Summary of the Defendant/Victim's Argument

1. The payment now in issue was a "contemporaneous exchange for new value pursuant to 11 U.S.C. §547 (c) (1) ; and,

2. Any recovery to the Trustee is negated by the *Mandatory Victims Restitution Act* of 1996 ("MVRA"), *18 U.S.C. §3663A and  18 U.S.C. 3613(a)*.

## Argument

## 11 U.S.C. §547 (c) (1)  Provides A Complete Defense; Or Alternatively, Raises Questions Of Fact

Section 547 (c) (1) provides as follows:

> (c) the Trustee may <u>not</u> avoid under this section a transfer  (emphasis added) -
>
> (1) to the extent that such transfer was-
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given by the debtor; and,
>
> (B) in fact a substantially contemporaneous exchange.

The obvious questions are 1) what "new value" was given and 2) contemporaneousness.

### New Value

Pursuant to the plea agreement, Mr. Grooms agreed to plead guilty to one count of wire fraud, and admitted that he, and another, embezzled $485,800 from Community Chevrolet, Inc. where he had previously been employed as its general manager; and was to make full restitution pursuant to 18 USC §§3663 and 3663A; with

partial restitution of $100,000 to be paid, which was paid on or about November 18, 2015, prior to sentencing.

It is noteworthy that the original deal which was proffered by Grooms' criminal counsel to the United States Attorney's Office (which was conveyed to the Victim) offered full restitution of $485,800 prior to sentencing. This amount was subsequently reduced to $100,000, prior to the Plea Agreement being accepted by United States Atty. David J. Hickton, and being docketed by the Clerk of the United States District Court on December 15, 2015. The Victim was neither consulted about nor had any input regarding the $385,800.00 reduction in restitution which was to be paid prior to sentencing.

While the obligation to eventually pay full restitution is statutory and non-negotiable; the immediate payment of partial restitution was/is extremely significant because the immediate payment of a significant sum as partial restitution, in the context of a downward deviation from Federal Sentencing Guidelines, satisfied the required "acceptance of responsibility" necessary for such a downward deviation from Federal Sentencing Guidelines. Immediate and upfront payment of $100,000.00 was Grooms' "key to admission" to a negotiated "reduced" sentence. Partial restitution of $100,000.00 was paid… a lesser sentence plea sentencing agreement was negotiated and agreed to by the U.S. Attorney's Office.

For sentencing purposes a person convicted of a federal crime is assigned a sentencing score based upon the crime(s) committed and other crime specific factors.

For a financial crime such as embezzlement/wire fraud; these factors include the amount of money stolen, other enhancement factors such as breach of fiduciary/insider duties of fidelity, and ameliorating factors such as cooperation and restitution. [see United States Sentencing Commission Guidelines Manual]

Mr. Grooms received "new value" as a result of this plea agreement. More specifically, Mr. Grooms pled guilty to a financial crime with a maximum sentence of 20 years or less. The Sentencing Guideline Manual at §2B1.1.(2) assigns a base offense level of "six" to such a crime. This base level is increased by "12" because the amount of the victim's loss was between $250,000 and $550,000. Additionally, the base level can be further increased by"2" because the crime was one of "Abuse Of Position Of Trust Or Use Of Special Skill" [Sentencing Guideline Manual at §3B1.3.]  The end result was a Level 20 Sentencing Guideline.

Rather than receiving a Level 20 sentence requiring between 33 – 41 months incarceration, Mr. Grooms has pled guilty with an agreed to sentence of 24 months incarceration as a result of a negotiated plea predicated upon the restitution now in issue. He will get out of jail 11 months early for paying $100,00.00 as partial restitution.

At the Defendant/Debtor's criminal plea hearing, the Assistant United States Attorney stated, " … the government recommends a three-level downward adjustment for his acceptance of responsibility" [Transcript page 19, lines 13 through 15]

A "Three Level" downward deviation due to acceptance of responsibility, ie. partial restitution, resulted in a Federal Sentencing Guideline Level "17" with a sentence of between 24 months in 30 months incarceration. The colloquy which took place on February 29, 2016 for US District Judge Cercone is instructive:

AUSA Trabold: … and, Your Honor, you should also be aware that this plea agreement contains a Rule 11(c)(1)(C) agreed upon plea and sentence in this case of a term of imprisonment of two years; a team of supervised release of three years; a $100 special assessment; in restitution to be paid to the victim of $485,800. With a minimum of $100,000 in restitution to be paid prior to sentencing, which Mr. Grooms has already done.

The Court: How much?

AUSA Trabold: $100,000. Your Honor, the plea agreement also indicates that the parties further agree that no other enhancements, departures or variances are applicable or appropriate…

The Court: Mr. Grooms, were the terms of the plea agreement, as you understand them to be, stately corrected by the Assistant United States Attorney?

The Defendant: Yes, sir. [Transcript page 19, lines 16 -25; and page 20, lines 1 – 7]

The Court: … I do expect to accept the stipulated sentence unless I discover something very disturbing in the presentence investigation report that would cause me to refuse to impose the stipulated sentence… [Transcript page 18, lines 5 -9]
The plea agreement was subsequent finalized on July 18, 2016.

USA v. Grooms, CR # 44 ERIE, USDC/WDPA, Plea Hearing Transcript **[EXHIBIT 1]**

<u>In re Tower Environmental, Inc.</u> 260 B. R. 213 (M.D. Florida, 1998), albeit in the context of a §548 dispute, extensively analyzes the issue of "value" in the context of a plea agreement between the debtor and the State of Florida whereby the debtor paid $760,899.59 restitution, and other payments and concessions, pursuant to a plea agreement whereby upon the receipt of these amounts, the State of Florida would dismiss various administrative proceedings would refrain from criminal prosecution of the corporate debtor, several related entities, and any officers, directors, shareholders, employees, or agents of said entities. That case is of particular significance because of its reliance upon <u>In re R.M.L., Inc.,</u> 92 F.3d 139 (3d Cir.1996).

The Tower court held:

> In a different context, the Third Circuit Court of Appeals provided a thorough analysis of the term "reasonably equivalent value," as contained in § 548(a)(2), in <u>In re R.M.L., Inc.,</u> 92 F.3d 139 (3d Cir.1996). In that case, the Court encountered the issue of whether a debtor had received reasonably equivalent value in exchange for commitment fees paid to a bank with respect to a loan that never closed. The Court acknowledged that the concept of "reasonably equivalent value" is not defined in the Bankruptcy Code, and further acknowledged that the absence of such a definition creates particular difficulties where, as in the case under consideration, the debtor exchanges cash for intangibles. <u>R.M.L., Inc.,</u> 92 F.3d at 148. In such instances, a two-step analysis is appropriate.
>
> First, the court must determine whether the debtor received any value at all in exchange for the transfer. The inquiry in the first step of the analysis is whether the debtor obtained "any benefit . . . whether direct or indirect, without regard to the cost of . . . services, the contractual and arm's length nature of the relationship, and the good faith of the transferee." Id. at 150. According to the Third Circuit Court of Appeals, this determination involves whether the debtor received any "realizable commercial value" as a result of the transaction. Id. at

149, citing Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 646-47 (3d Cir.1991), cert. denied, 503 U.S. 937, 112 S. Ct. 1476, 117 L.Ed.2d 620 (1992). While not restricting the definition of value, since the issue in R.M.L. involved whether value was received in exchange for the fees for a contingent commitment to make a loan, the court held that "the mere `opportunity' to receive an economic benefit in the future constitutes `value' under the Code." In re R.M.L., 92 F.3d at 148. In that case, the Third Circuit focused on whether the debtor received "at least some chance of receiving a future economic benefit" or, in other words, whether the debtor received "some chance" that the transfer would generate a positive return. Id. at 150-52.

Second, if it is determined that "value" was in fact conferred on the debtor as a result of the transaction, the court must then determine whether that value was reasonably equivalent to the cash transferred by the debtor. In making this assessment, the court may apply a "totality of the circumstances" test. Id. at 153. The totality of the circumstances test includes the consideration of a variety of factors, such as the fair market value of the item or service received compared to the price paid, the arms-length nature of the transaction, and the good faith of the transferee. Id. at 150.

In R.M.L., Inc., the Third Circuit Court of Appeals concluded that the debtor in that case did receive "value" in exchange for the fees paid in connection with the loan commitment letter, even though the loan never closed, because there was "at least some chance" at the time of payment that the loan could be concluded and the debtor's financial troubles could be resolved. Id. The Third Circuit also found, however, that the chance that the loan would close was negligible, and that the debtor's opportunity to receive value in the future as a result of the transaction was "extremely remote." Id. at 148. These findings were based on the fact that the commitment letter contained so many conditions, including the condition of a significant equity investment by a third party, that there was little possibility that the debtor would ever actually obtain the loan sought. Id. at 154. The Third Circuit therefore upheld the bankruptcy court's determination that the minimal value associated with the

>opportunity to obtain the loan was not "reasonably equivalent" to the commitment fees that the debtor had paid to the bank.

In clear reliance upon the Third Circuit cases of <u>R.M.L., Inc</u> and <u>Mellon Bank, N.A. v. Metro Communications, Inc,</u> the Tower court unequivocally held that resolution of criminal charges in the context of a plea agreement constitutes "value" in regard to §548. This result is equally applicable to a §547 "new value" analysis:

> In this case, the Plea Agreement resulted in both immediate direct benefit and the opportunity to obtain future economic benefit. The Plea Agreement resolved the charges in the indictment, which represented substantial disputed debts, allowed the Debtor to avoid future costs associated with the defense of 45 felony charges, allowed the Debtor to pay a substantial portion of the settlement amount in installments, and also provided that the State agreed not to pursue the racketeering and conspiracy charges. The Court concludes that resolution of the substantial charges in the indictment resulted in direct benefit. Further, since the provision for satisfaction of the liability in installments may have benefited the Debtor by giving it the time and opportunity to make financial arrangements for payment or to make payments from operations, the Court determines that the Debtor received some chance of a future economic benefit from the settlement. Given the resolution of substantial disputed debts, as well as the chance of future economic benefit, the Court concludes that the Debtor received value in exchange for its obligations and payments pursuant to the Plea Agreement. (Id at 226)

## **Substantially Contemporaneous Exchange**

The concept of "substantially contemporaneous exchange" must be viewed in its context. For instance, in the context of the purchase groceries, purchasing groceries and paying for them typically occurs simultaneously. Plea agreements are a process rather than a single event. More specifically, there is an investigation, negotiations between the

government counsel and defense counsel, an Information or an Indictment and plea agreement (not necessarily in that sequence), restitution payments, plea hearing, and sentencing. This process requires the passage of months, especially in the Erie Division since there has not been a resident Federal District Judge. The payment of $100,000 by Grooms was in integral part of this process and for that reason was a "substantially contemporaneous exchange"

In the matter of In re Citron, 428 B.R. 562 (E.D.NY, 2010) also addressed the issues of "new value" and "substantially contemporaneous exchange" in the context of §547 restitution payments pursuant to a state plea agreement. The Citron court held, "that if new value was provided under Section 547(a)(2) incident to Jeffrey Citron's plea agreement, the $75,000 he paid was intended to be a contemporaneous exchange and was in fact a temporary exchange for purposes of Section 547(c)(1).

The court went on to rule that, "a trial is required to determine what potential maximum prison sentences and monetary fines would have been had Jeffrey Citron not pleaded guilty, and the quantitative value of avoiding those potentials terms of incarceration in fines, in order to determine what money or money's worth in goods, services or new credit Jeffrey Citron received in exchange for his plea agreement for section 547(c)(1) and 547(c)(2) purposes.

## Any Recovery To The Trustee Is Subject To
## The Mandatory Victims Restitution Act Of 1996 ("MVRA"), 18 U.S.C. §3663A
## And  18 U.S.C. 3613

Defendant, Community Chevrolet, Inc. recognizes and acknowledges that the Mandatory Victims Restitution Act of 1996 and 18 U.S.C. §3613 do not provide for private rights of enforcement. Rather, they are enforceable by the United States of America. However, the intent and purpose of each of these statutes is to enable the United States of America to enforce federal restitution orders for the benefit of crime victims. Community Chevrolet, Inc. is such a crime victim. The debtor, Douglas A. Grooms, has been ordered by the United States District Court for this district to pay restitution to Community Chevrolet, Inc. in the amount of $485,8050. The sum of $100,000 was paid to Community Chevrolet, Inc. prior to sentencing.

Various statutes are often times inconsistent and at times contradictory in their result. The Bankruptcy Code's provisions dealing with criminal restitution exhibit those inconsistencies. While §523(a)(13) is a statutory exception to discharge with regard to "any payment for an order of restitution issued under Title 18, United States Code, there is no corresponding "federal restitution" safe harbor with regard to the preference crawl back provisions of §547.

Thus, the victim of a Title 18 crime who is the beneficiary of a federal restitution order of the United States District Court is protected from dischargeability of the debt established by that order pursuant to §523; but, remains subject to a

disgorgement action in the United States Bankruptcy Court pursuant to §547. In the matter now before this court, the Trustee's Adversary Proceeding, if successful; would allow Mr. Grooms to receive benefit of his plea agreement - while Community Chevrolet, Inc./ Mr. Kongelka, who has already been the victim of Grooms' $480,800.00 embezzlement, would be ordered to disgorge the $100,000 partial restitution paid to him pursuant to the specific terms of the federal plea bargain agreement, *which plea bargain agreement exists only because those same funds had be paid to Mr. Kongelka, prior to Mr. Grooms being sentenced by United States District Judge Cercone.*

Mr. Kongelka emphasized this dichotomy of results while addressing Judge Cercone during the Debtor's Sentencing hearing on July 11, 2016. The following discussion between the AUSA Trabold and J. Cercone then took place:

> The Court: Mr. Trabold. Anything you would like to say in light of the victim's comments here?

> Trabold: well, year Honor, obviously, our office has no control over what the U. S. Bankruptcy trustee wants to do. We are working with them in an effort to hopefully work things out in the effort that Mr. Kongelka doesn't have to pay back to $100,000 in restitution,  which obviously would be unfortunate and I believe in unjust resolution of that issue. I don't think ultimately that is what's going to happen. Obviously, I can't guarantee --

> The Court:   I never heard of that. I never heard of restitution paid pursuant to a District Court Judge's sentencing order be, what's the word I want to say-- overturn, if you will, I the bankruptcy.
>
> Trabold:   I agree with that. Part of the difficulty in this case, obviously, your Honor, I would have looked a little more skeptically at the restitution payment had I known that within weeks of providing that restitution payment Esther Grooms was going to file for bankruptcy….
>
> The Court:  again, I haven't really spent time researching the issue, but this $100,000, this wasn't paid pursuant to some business obligation or contractual obligation or even a civil judgment. This was part of a sentence in a criminal court. I can't imagine that that amount would be disturbed…
>
> USA v. Grooms, CR # 44 ERIE, USDC/WDPA, Sentencing Transcript, p.8, lines 9-25; p.9, lines 1-2 & 18-23 **[EXHIBIT 2]**

It is respectfully submitted that J. Cercone was correct. More specifically, the Mandatory Victims Restitution Act of 1996 and/or 18 U.S.C. §3613 ultimately empower(s) the United States Attorney's Office to enforce the Title 18 Restitution Order; and, to remit the proceeds of such enforcement action to Grooms' victim, Community Chevrolet, Inc.

Defendant Community Chevrolet, Inc. defers to the Brief filed by the United States of America with regard to Mandatory Victims Restitution Act of 1996 and 18 U.S.C. §3613 issues.

Wherefore, Defendant Community Chevrolet, Inc. respectfully request judgment denying the motion for summary judgment filed by Trustee Spero and determining that issues of fact exist in regard to "new value" or alternatively granting summary judgment, sua sponte, to Defendant Community Chevrolet, Inc..

Alternatively, in the event that summary judgment is not granted, sua sponte, against Trustee Spero, Community Chevrolet, Inc. requests that summary judgment should be entered in favor of the United States of America and against Trustee Spero.

Respectfully submitted this 24th day of January, 2017,

/s/ John E. Nagurney, Esq.

Attorney for Defendant Community Chevrolet, Inc.
12063 Midway Drive
Conneaut lake, PA 16316
(814) 282-3328
PA ID# 53164